IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | NO. 3:20-cr-00154 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| | ) | |
| DANIEL LEWIS INMAN | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 50), and Motion for Appointment of Counsel (Doc. No. 51). Via the Motion for Compassionate Release, Defendant seeks a reduction of his 60-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a response in opposition (Doc. No. 55, "Response"), arguing that the Motion should be denied because Defendant has not established "extraordinary and compelling reasons for his release" and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

BACKGROUND

On April 17, 2020, the Government charged Defendant in a criminal complaint with one count of possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1). On December 1, 2020, Defendant pled guilty to the sole count pursuant to a Rule 11(c)(1)(B) plea agreement. (Doc. No. 30). On April 21, 2021, this Court sentenced Defendant to 60 months of imprisonment followed by three years of supervised release. (Doc. No. 45). Defendant has been serving his sentence at USP Coleman. According to BOP, Defendant's release date is July 9, 2024. *See Federal Inmate Locator*, Bureau of Prisons,

https://www.bop.gov/inmateloc/ (last accessed Jan. 27, 2022).

ANALYSIS

I. MOTION FOR APPOINTMENT OF COUNSEL

Defendant seeks appointment of counsel. (Doc. No. 51). The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). The decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court. *See United States v. Stephens*, 2020 WL 3250226 at *2 (E.D. Mich. June 16, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Defendant fails to present any unique circumstances justifying appointment of counsel. A compassionate release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that the defendant appeared able to adequately present his claim). Defendant has failed to articulate why he is unable to present his request for compassionate release pro se. Moreover, the Court believes

that it is able to fairly adjudicate such motions even though one side (and not the other) is unrepresented by counsel. That is not to say that learned counsel cannot contribute something, especially something regarding nuances, to a defendant's cause on these motions. But it is to say that typically, the degree of substantive merit of these very fact-based motions is evident to the Court even without learned counsel advocating the merits on the defendant's behalf. Accordingly, Defendant's Motion for Appointment of Counsel (Doc. No. 50) is DENIED.

II. MOTION FOR COMPASSIONATE RELEASE

    <u>Legal Standard</u>

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[1] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to

---

[1] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy

statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[2] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.*

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[3] The sentencing factors set forth in Section 3553(a) include:

---

[2] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

[3] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
        i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
        ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Discussion

A. Extraordinary and Compelling Reasons

To grant the Motion for Compassionate Release, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to persuade the Court to make such a determination. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not

meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling'" in the sense that it is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added).

Defendant bases his request for compassionate release on the following reasons that he contends are extraordinary and compelling: (1) "his current health conditions and the rapid spread of COVID-19";[4] (2) he went through heart valve replacement and defibrillator implant in 2020, making him "more likely to succumb" to COVID-19; (3) he has not received any incident reports during his incarceration and he is enrolled in the Challenge Program. (Doc. No. 50 at 1-2.). In the Response, the Government argues that these reasons are not "extraordinary" nor "compelling" because Defendant does not submit any proof of these reasons. But even if he had, the Government contends, those reasons are still not "extraordinary" and "compelling," because Defendant has been vaccinated and because rehabilitation (although commendable), is something the Court should expect of every incarcerated defendant and Congress has made clear that rehabilitation alone does not amount to an extraordinary and compelling reason. (Doc. No. 55 at 4-7).

First, the Court finds that none of Defendant's health conditions (hypertension, constipation, a gastric ulcer, alcohol use disorder, a severe stimulant related disorder, a pacemaker, and recent heart-valve replacement) combined with the COVID-19 pandemic rise to the level of extraordinary and compelling reasons, because his medical records indicate that he received the COVID-19 vaccine. (Doc. No. 57-3 at 1). The Sixth Circuit recently held that a defendant's mere access to the COVID-19 vaccine while incarcerated forecloses a finding of extraordinary and compelling reasons based on a defendant's underlying health conditions, unless the defendant can

---

[4] Defendant does not inform the Court what these health conditions are. In the Response, the Government states that a review of Defendant's medical records reveal that he has hypertension, constipation, a gastric ulcer, alcohol use disorder, and a severe stimulant related disorder. (Doc. No. 55 at 5).

advance a "compelling reason" justifying the defendant's failure to be vaccinated. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). The court explained:

> We need not debate the medical implications of Lemons's [health] condition. For even recognizing the purported seriousness of his condition, the fact remains that, as Lemons acknowledges, the COVID-19 vaccine is available to him in prison. . . .
>
> Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19.

*Id.*; *see also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (reaffirming *Lemons* and finding that although the defendant's medical conditions were serious, he had access to the COVID-19 vaccine, and therefore his incarceration during the COVID-19 pandemic did not present an extraordinary and compelling reason for a sentence reduction). The Sixth Circuit further explained that if "an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification." *Id.*; *see also United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *3 (6th Cir. Nov. 18, 2021) (citing *Lemons* and finding that the district court abused its discretion when the district court granted compassionate release to an inmate who had been fully vaccinated). Thus, given the wide availability of the COVID-19 vaccine, *Lemons* forecloses a substantial portion of inmates' arguments that their underlying health

conditions combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for release.[5]

As noted, however, *Lemons* does leave open the avenue of asserting a compelling reason for not taking the vaccine despite its availability to the defendant. But this avenue is not available here. The Government has filed Defendant's BOP vaccination record, which reveals that Defendant has been fully vaccinated.[6] (Doc. No. 57-3 at 1). Defendant received the first dose of the Pfizer vaccine on July 19, 2021, and the second dose on August 9, 2021. (*Id.*). So even if Defendant had offered evidentiary proof of his health conditions, because Defendant has been vaccinated, those health conditions coupled with the COVID-19 pandemic do not amount to an "extraordinary and compelling reason" warranting a sentence reduction. *Lemons*, 15 F.4th at 751.

Moreover, it is beyond dispute that persons outside of prison are extremely susceptible to the current COVID-19 variant (Omicron). So to the extent that Defendant's argument is that he needs to be released into the community to better evade COVID-19, the argument is a non-starter because there is no reason to conclude that his risk of infection from COVID-19 would be reduced were he released from prison.

Accordingly, the Court finds that Defendant has not met his burden to demonstrate that his medical conditions are extraordinary and compelling reasons for his release.

---

[5] In April of 2021, the Director of the BOP informed Congress that COVID-19 vaccines are available to all federal prisoners. *See, e.g., Oversight of the Federal Bureau of Prisons: Hearing Before the S. Comm. on the Judiciary*, 117 Cong. (2021) (statement of Michael D. Carvajal, Dir. Fed. Bureau of Prisons), https://www.judiciary.senate.gov/meetings/04/08/2021/oversight-of-the-federal-bureau-of-prisons (last accessed Jan. 28, 2022). With the increase in vaccine availability since that time, there is no reason to doubt that this remains the case.

[6] Although "booster" vaccines are now available, the CDC continues to consider someone "fully vaccinated" when he or she has "received their primary series of COVID-19 vaccines." *See Stay Up to Date with Your Vaccines*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fvaccines%2Ffully-vaccinated.html (last accessed Jan. 28, 2022) ("A person is considered fully vaccinated with vaccines against SARS-CoV-2 infection ≥2 weeks after receipt of the second dose in a 2-dose series (Pfizer-BioNTech and Moderna) or ≥2 weeks after receipt of a single dose of the Janssen COVID-19 Vaccine.").

Defendant's final asserted extraordinary and compelling reason is that "he has not received any incident reports, and he is currently enrolled in the Challenge Program to better his core values as well as personal development[.]" (Doc. No. 50 at 2). Defendant asks the Court to consider this rehabilitation an extraordinary and compelling reason.

The Sixth Circuit has explained that "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)); *see also United States v. McCall*, 20 F.4th 1108, 1114 (6th Cir. 2021). The Court has found above that none of Defendant's other asserted reasons (his medical conditions combined with the COVID-19 pandemic) for release rose to the level of extraordinary and compelling. So Defendant's rehabilitation would have to be considered extraordinary and compelling standing alone, which as just noted would be inconsistent with congressional intent. Therefore, the Court finds that Defendant's rehabilitation is not an extraordinary and compelling reason to grant compassionate release.

Accordingly, the Court finds that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release. This conclusion applies when considering each of his asserted extraordinary and compelling reasons separately, or cumulatively. *See Lemons*, 15 F.4th at 749 (noting that a "combination of grounds for release, none of which independently supports a sentence reduction, does not collectively" permit a sentence reduction). Thus, his Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion for Compassionate Release (Doc. No. 50) and the Motion for Appointment of Counsel (Doc. No. 51) will be **DENIED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE